<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| COA NETWORK, INC., <br><br> Plaintiff, <br><br> v. <br><br> J2 GLOBAL COMMUNICATIONS, INC., <br><br> Defendant. | Hon. William J. Martini <br> Civil Action No. 09-6505 (WJM) <br><br> <u>**OPINION**</u> |

**<u>Falk, U.S.M.J.</u>**

Before the Court is Defendant J2 Global Communications, Inc.'s ("J2") motion to transfer venue to the Central District of California pursuant to 28 U.S.C. § 1404(a) or, in the alternative, to stay [CM/ECF Docket Entry No. 15]. Plaintiff COA Network, Inc. ("COA") opposes the motion. Pursuant to Fed. R. Civ. P. 78, the Court did not hear oral argument. For the reasons that follow, Defendant's motion to transfer is **granted**.

<u>**BACKGROUND**</u>

On November 13, 2009, J2 wrote to COA claiming that COA was infringing four of J2's patents. (Compl. ¶ 11.) The patents - numbers 6,208,638 (the '638 patent); 6,350,066 (the '066 patent); 6,597,688 (the '688 patent); and 7,020,132 (the '132 patent) (collectively "J2's patents") - cover methods for the transmission and storage of facsimile and audio messages. (Answer ¶¶ 7, 15.) COA denies infringement and believes the patents are invalid and/or unenforceable and thus continued to sell the products that allegedly infringed J2's patents.

COA then filed this declaratory judgment action seeking "to put an end to J2's unjustified accusations and allegations." (Compl. ¶ 1.) Specifically, COA seeks a judgment declaring that COA's products do not infringe any of the claims of J2's patents and that the patents are invalid and/or unenforceable. (Compl. ¶ 1.) J2 answered and asserted a Counterclaim alleging that COA's Network iTeleCenter service infringes two of J2's patents, the '638 patent and the '066 patent. (Countercl. ¶¶ 9, 17.)

COA is a New Jersey corporation located in Piscataway that provides integrated applications to businesses for audio conferences, voicemail services, and sales automation. Id. ¶ 2. J2 is a Delaware corporation with its principal place of business in Los Angeles, California. (Answer ¶ 4.) J2 provides messaging and communication services. Id. ¶ 1.

J2 now seeks to transfer this action to the Central District of California. ("C.D.") Currently pending in the C.D. are five patent infringement actions brought by J2 against parties other than COA. (See Johnson Decl. Exs. A-E.) In two of the cases, J2 has asserted all four of the patents-in-suit; in two other cases, J2 has asserted three of the four patents-in-suit; and in one case J2 has asserted one of the patents-in-suit. Id. The five cases are pending before the same Judge and are currently on coordinated schedules. Id.

In the alternative, J2 moves to stay this action during the pendency of the cases in California.

## DISCUSSION

**A. Transfer Pursuant to § 1404(a)**

28 U.S.C. § 1404(a) provides: "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The purpose of section 1404(a) "is to prevent the waste of 'time, energy and

money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expenses . . . .'" Ricoh Co., Ltd. v. Honeywell, Inc., 817 F.Supp. 473, 479 (D.N.J. 1993) (quoting Van Dusen v. Barrack, 376 U.S. 612, 616 (1964)). The Court "is vested with a large discretion" when deciding whether to transfer a case. Telcordia Technologies, Inc. v. Tellabs, Inc., No. 09-2089, 2009 WL 5064787, at *1 (D.N.J. Dec. 16, 2009) (quoting Solomon v. Continental Am. Life Ins. Co., 472 F.2d 1043, 1045 (3d Cir. 1973)).

The moving party bears the burden of establishing 1) that the proposed transferee forum is one in which the case "might have been brought" and 2) that in the interest of justice the proposed transferee forum is more convenient for parties and witnesses. See CIBC World Mkts., Inc. v. Deutsche Bank Sec., Inc., 309 F.Supp.2d 637, 643 (D.N.J. 2004) (citing Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995)).

**B. Analysis**

### 1. *The Case Could Have Been Brought in the Central District of California*

Section 1404(a) limits the Court's ability to transfer venue to another district unless the plaintiff had an "'unqualified right' to bring the action in the transferee forum at the time of the commencement of the action . . . ." Shutte v. Armco Steel Corp., 431 F.2d 22, 24 (3d Cir. 1970) (quoting Van Dusen v. Barrack, 376 U.S. 612, 617 (1964)). Therefore, the court must have subject matter jurisdiction over the matter as well as personal jurisdiction over all defendants, and venue must be proper in the transferee forum. See Yang v. Odom, 409 F.Supp.2d 599, 604 (D.N.J. 2006) (citing Shutte, 431 F.2d at 24)).

Plaintiff could have brought this case in the C.D. The federal court in California would obviously have subject matter jurisdiction over this patent action. The Court would also have

3

personal jurisdiction over the lone defendant in the case, J2, since the corporation's principal place of business is in Los Angeles. Venue would also be proper.

COA, however, creatively disputes that this case could have been brought in the Central District of California. (Pl's Br. 11-12.) COA argues that in a declaratory judgment action the court should analytically realign the parties - plaintiff becomes the defendant and defendant becomes the plaintiff - for the purposes of determining if jurisdiction exists. Id. at 11. COA argues that it is the "natural" defendant in the action as indicated by J2's counterclaims for infringement and that the California court does not have personal jurisdiction over COA. Id.

COA does not cite any authority that suggests that a court should realign the parties when considering a transfer motion. Court's have, in very different circumstances, analytically examined the alignment of the parties to determine if there was federal jurisdiction. Mich. Dept. of Cmty. Health v. Woodcare X, Inc., No. 09-758, 2009 WL 3719199, at *1 (W.D.Mich. Nov. 4, 2009). Even assuming such an exercise was proper, it certainly does not support realignment to block transfer on personal jurisdiction grounds. It is beyond dispute that COA had an unqualified right to bring this case in California.

   2. *Convenience and Justice Factors*

The Third Circuit has enumerated private and public interests that a Court should consider in order to determine which forum would be more convenient and whether the interests of justice would be served by transferring an action. See Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995). The private interests are:

> [P]laintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the

witnesses-but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

Id. (citations omitted). The public interests include:

[T]he enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

Id. at 879-80 (citations omitted).

      a. *Private Interests*

          (1) Choice of Forum

In a section 1404(a) analysis, plaintiff's choice of forum receives some deference, particularly when choosing its home forum. See Sandvik, Inc. v. Continental Ins. Co., 724 F.Supp. 303, 307-308 (D.N.J. 1989). However, a plaintiff's forum selection is not dispositive, and courts often transfer cases when the other interests of convenience and justice weigh in favor of the proposed transferee forum. Id. See also Schiller-Pfeiffer, Inc. v. Country Home Prods., Inc., No. 04-1444, 2004 WL 2755585, at * 9-10 (E.D.Pa. Dec. 1, 2004) (transferring an action where a plaintiff chose its home forum because the case could be consolidated with a related litigation pending in the proposed transferee forum).

          (2) Where the Claim Arose - The Hub of Activity

Generally, in a patent infringement action, the claim "arises" where the "development, testing, research and production" of the alleged infringing activity occurred "as well as where marketing decisions are made . . . ." Refined Recommendation Corp. v. Netflix, Inc., No. 07-4981, 2008 WL 474105, at *4 (D.N.J. Feb. 15, 2008) (citing Ricoh Co., Ltd. v. Honeywell, Inc., 817

F.Supp. 473, 482 n.17 (D.N.J. 1993)). Here, COA's alleged infringing activity primarily occurred in New Jersey. The fact that some sales of COA's products occurred elsewhere does not shift the hub of activity from this District. See id.

### (3) Convenience of the Parties

Neither party has sufficiently demonstrated that the convenience of the parties as indicated by their relative physical and financial condition should tip the scales in its favor. COA asserts that it is a small compared to J2. (See Pl's Br. 5-6.) It notes that it has only ten (10) employees and less than three million dollars in revenue compared to J2's $245 million in revenue. (Id. at 6; Keyhani Decl. ¶ 2.) Therefore, COA claims that litigating the case in the Central District of California would impose a heavier burden on it as compared to the burden on J2 in defending itself in New Jersey.

While litigating in the Central District of California may impose some additional expense on COA, it will likely provide COA with a faster resolution to its lawsuit. There are five cases pending before the same Judge in the C.D. that address the exact same four patents-in-suit here. (See Johnson Decl. Exs. A-E.) In all five cases, the technology that has allegedly infringed J2's patents is similar to COA's technology–an Internet facsimile service. (Def's Br. 9-10.) The C.D. Court has already scheduled a joint *Markman* hearing for all five cases in August. Conversely, this case is just beginning. It could easily take a year before this Court is able to conduct a *Markman* hearing. Since claim construction often leads to resolution of patent disputes, transfer to California could conceivably shorten the litigation--thus reducing attorneys' fees and costs to COA. See Metrologic Instruments, Inc. v. Symbol Techs., Inc., 460 F.Supp.2d 571, 582 (D.N.J. 2006). This factor counterbalances COA's claims that transfer would be more inconvenient for COA. Additionally, COA's convenience argument may be somewhat overstated. Travel for discovery will likely be

6

necessary regardless of where the case is venued. Moreover, COA's counsel has an office in California, which could aid efforts to minimize costs. (See Def's Reply 4.)

(4) Witnesses[1]

The convenience of witnesses is an important factor in a 1404(a) analysis. See Teleconference Sys. v. Proctor & Gamble Pharm., 676 F.Supp.2d 321, 331 (D.N.J. 2009). See also Copley v. Wyeth, Inc., No. 09-722, 2009 WL 2160640, at *5 (E.D.Pa. July 17, 2009). Assuming the case is tried, trial in California would be more convenient for J2's party witnesses, although not unreasonably inconvenient for COA's. In the modern business world, travel for business is somewhat routine and not unexpected.

A more important consideration is the location and convenience of non-party witnesses. In fact, the availability of compulsory process to compel the attendance of non-party witnesses has been referred to as the *most important* transfer factor. Teleconference Sys., 676 F.Supp.3d at 331. This factor weighs heavily in favor of transfer.

J2 has certified that there are three important non-party witnesses who are located in the Central District of California and would not be subject to compulsory process in the District of New Jersey. (Berstein Decl. ¶¶ 3-5.) Significantly, one of the named inventors of the '688 patent and the '132 patent resides in Los Angeles. Id. ¶ 3. Two attorneys involved in the prosecution of the '638 patent and '688 patent also reside in California. Id. ¶ 5. Live testimony is generally preferred and

---

[1] Location of Books and Records - Neither party has established that documents will be unavailable in either forum. COA merely notes that much of the relevant information for trial, including computer servers and other documents, is located in New Jersey. (Pl's Br. 6.) Yet, COA does not claim that it could not produce the documents in California. Accordingly, the location of books and records will not affect this Court's balancing of interests. See Lester v. Gene Express, Inc., No. 09-403, 2009 WL 3757155, at *6 (D.N.J. Nov. 10, 2009).

parties should not unnecessarily be forced to rely on trial by deposition. See In re Consol. Parlodel Litig., 22 F.Supp.2d 320, 324-25 (D.N.J. 1998). The unavailability of compulsory process to mandate that these critical witnesses testify at trial in New Jersey supports transferring this case to the C.D. See id.

      b. *Public Interests*[2]

          (1) Interest in Deciding Local Controversies and Public Policies of the Fora

The District of New Jersey does not have a specific "local interest" in adjudicating this dispute. Patent infringement lawsuits are matters of national concern that are not "local controversies," nor do they implicate the public policies of any one forum. See Schering Corp. v. Amgen Inc., 969 F.Supp. 258, 269 (D.Del. 1997); ICU Med. Inc. v. Rymed Technologies, Inc., No. 07-468, 2008 WL 205307, at *4 (D.Del. Jan. 23, 2008).

          (2) Practical Considerations, the "Interests of Justice," and Avoiding Inconsistent Patent Rulings

J2 argues that unique practical considerations weigh in its favor given the five cases pending in the C.D. relating to the patents-in-suit. (Def's Br. 9.) In two of the cases, J2 has asserted patent infringement claims pertaining to all four of the patents-in-suit. Id. In two other cases, J2 has asserted three of the four patents-in-suit, and in one case, J2 asserted infringement of one of the four patents-in-suit here. Id. As previously noted, the cases are well along and already scheduled for a joint *Markman* hearing. (See Johnson Decl. Exs. A-E.) J2 credibly maintains that the technology

---

[2] The parties only set forth arguments regarding the following public interest factors: the local interest in deciding local controversies at home; the public policies of the fora; and the practical considerations that could make the trial easy, expeditious, or inexpensive. Therefore, this Court will not consider the remaining public interests, including the enforceability of the judgment, the relative administrative difficulty in the two fora resulting from court congestion, and the familiarity of the trial judge with applicable state law in diversity cases.

at issue is very similar in all of the cases. (Def's Br. 9-10.) Therefore, J2 submits that transfer to the C.D. would avoid duplicating the work already done by that Court and more importantly, the possibility of incongruous construction of the patents. (Def's Br. 10.)

The Supreme Court has held that allowing lawsuits with similar issues to proceed simultaneously in different districts "leads to wastefulness of time, energy and money that [section] 1404(a) was designed to prevent." Cont'l Grain Co. v. Barge FBL-585, 364 U.S. 19, 26 (1960). Transferring a related action to another district where similar cases are already pending "serves not only private interests but also the interests of justice" as it eliminates the possibility of inconsistent results. CIBC World Mkts. v. Deutsche Bank Sec., Inc., 309 F.Supp.2d 637, 651 (D.N.J. 2004) (citing Crackau v. Lucent Technologies, No. 03-1376, 2003 WL 22927231, at *7 (D.N.J. Nov. 24, 2003)). Accordingly, courts in this Circuit have transferred patent cases under similar circumstances. See Ricoh Co., Ltd., v. Honeywell, Inc., 817 F.Supp. 473, 487 (D.N.J. 1993); Weber v. Basic Comfort Inc., 155 F.Supp.2d 283, 286 (E.D.Pa. 2001).

In a patent case, the risk of inconsistent results is a compelling consideration given the Supreme Court's mandate regarding the uniform construction of patent claims. See Key Pharm. v. Hercon Labs. Corp., 161 F.Supp.3d 709, 716 (Fed. Cir. 1998) ("We do not take our task lightly in this regard, as *we recognize the national stare decisis effect that the court's decisions on claim construction have*.") (emphasis added); Cybor Corp. v. FAS Technologies, Inc., 138 F.3d 1448, 1455 (Fed. Cir. 1998) ("[T]he Supreme Court endorsed this court's role in providing national uniformity to the construction of a patent claim . . . ."). Since holding dueling claim construction hearings in separate fora on the same patents risks inconsistent results, the possibility of judicial waste is high. This supports transfer here.

9

Additionally, the District Court Judge in the Central District of California before whom the five related matters are pending has the benefit of years of experience regarding J2's patents. See Aventis Pharma S.A., 2007 WL 1101228, at *3-4 (finding transfer appropriate to another District when the judge there was assigned to a case involving the same patent at issue). See also Jolly v. Purdue Pharma L.P., No. 05-1452H, 2005 WL 2439197, at *3 (S.D. Cal. Sept. 28, 2005) (transferring a case when "the presiding judge [in the other District] has developed a level of expertise and experience with th[e] particular factual background . . . in th[e] case").[3]

COA argues that concurrent litigation in the proposed transferee forum does not necessitate transfer. (Pl's Br. 8.) Specifically, COA claims that its products and services that J2 alleges infringe J2's patents differ from the technology at issue in the pending California cases. Id. at 9-10. Yet, claim construction rulings do not entirely depend upon the product that a company manufactures. Rather, claim construction focuses solely on the claims of the patent, which are the same no matter the product or service at issue in the case. Furthermore, COA has not demonstrated that the products and services of the defendants in the California cases differs in any significant way from COA's technology. Indeed, four of the five cases in California involve Internet fax services. (Def's Br. 1.)

COA also states that the possibility of inconsistent results is not unreasonable and cites Pharmanet, Inc. v. Datasci LLC, where a court chose not to transfer an action to a district where a judge had presided over previous suits regarding the same patent. No. 08-2965, 2009 WL 396180, at *16 (D.N.J. Feb. 17, 2009). Pharmanet is distinguishable. There, the defendant sought transfer

---

[3] A trial court judge's familiarity with the facts differs from the public interest that considers a judge's familiarity with the applicable state law in a diversity suit, which is not implicated in this matter. A judge's knowledge regarding specific patents is a factor in an analysis of the public interest of "practical considerations." See Aventis Pharma S.A., 2007 WL 1101228, at *3-4.

10

to the District of Maryland where it had its principal place of business.  2009 WL 396180, at *1.  However, unlike the instant case, the defendant did not develop its patent in the district in which it sought to transfer the action.  Id. at *16.  More importantly, the pending cases in the proposed transferee forum were filed by defendant *after* the plaintiff had brought suit in its preferred forum.  Id.  Here, the five cases pending in the C.D. were filed first.  (See  Johnson Decl. Exs. A-E.)

C. Summary

The smaller New Jersey corporation's choice of forum weighs slightly in favor of keeping this case in New Jersey.  However, the unavailability of compulsory process in New Jersey over the inventor and other important witnesses outweighs any slight imbalance in convenience.  The overarching mandate to avoid inconsistent claim construction in patent cases together with the five consolidated cases pending in the C.D. involving the same patents--on the brink of *Markman* claim construction--is dispositive of the issue.  Transfer to California is warranted in the interests of justice.

## CONCLUSION

For the foregoing reasons, this case will be transferred to the District Court for the Central District of California.  A separate order accompanies this opinion.

 /s/Mark Falk  
**MARK FALK**  
**United States Magistrate Judge**

Dated: June 17, 2010